RICH MICHAELSON MAGALIFF LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
646.453.7851
Jeffrey N. Rich
Howard P. Magaliff

*Attorneys for the Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

| | |
|---|---|
| In re: : | |
| : | Chapter 11 |
| MEMORY LANE MUSIC GROUP LLC, : | Case No. 22-70838 (AST) |
| : | |
| Debtor. : | |

------------------------------------------------------------ x

**DEBTOR'S OMNIBUS OBJECTION AND RESPONSE
TO MOTIONS OF *BUNCH* CREDITORS (I) TO DISMISS
THE CHAPTER 11 CASE, (II) FOR RELIEF FROM
THE AUTOMATIC STAY, AND (III) FOR ABSTENTION**

TO THE HON. ALAN S. TRUST,
CHIEF U.S. BANKRUPTCY JUDGE:

Memory Lane Music Group LLC ("Memory Lane" or the "Debtor"), by its attorneys Rich Michaelson Magaliff, LLP, respectfully submits this omnibus objection and response to the motions of the Plaintiffs in the State Court Action (defined *infra*) (i) to dismiss the chapter 11 case [doc. 22], (ii) to lift the automatic stay [doc. 23], and (iii) for abstention [doc. 32], and states:

**Preliminary Statement**

1.  The Debtor is a defendant in an action pending in Supreme Court, New York County entitled *William Bunch, et al. v. Memory Lane Music Group, LLC, et al.*, Index No. 654117/2019 (the "State Court Action"). The Plaintiffs allege that they are the successors in interest to certain rights and interests of various American composers and songwriters including

the rights to earnings arising from the exploitation of their songs throughout the world, and that Memory Lane failed to provide semi-annual accountings to the plaintiffs accompanied by payment of all monies collected. The Plaintiffs also sued Mark Spier ("Spier"), the Debtor's president and manager, three wholly owned subsidiaries of the Debtor, and three other entities. The Plaintiffs claim that Spier, the wholly-owned subsidiaries and the three other entities alluded to above are all "alter-egos" of Memory Lane.

2. The State Court Action is a straightforward breach of contract lawsuit against the Debtor. The claims against Spier and the other defendants are alter ego claims, which under well-settled New York law are not standalone causes of action. The alter-ego claims depend entirely upon the ability of the Plaintiffs to pierce the corporate veil of Memory Lane, and cannot be prosecuted in the absence of Memory Lane.

3. The Plaintiffs' motions are based on conclusory allegations which, far from being supported by any proof, are simply stated by their attorneys and, for the most part, are misstatements of fact. When the actual facts are examined, it becomes apparent that there is no basis for these motions. Similarly, the motions rely on erroneous statements of law, which compounds their deficiency because the wrong legal analysis is being applied to incorrect facts.

4. Specifically, the Plaintiffs incorrectly conclude (i) that this case is a two-party dispute (Motion to Dismiss, p. 4), (ii) that none of the debts of Memory Lane's 15 other "large" unsecured creditors "were so significant as to require resort to chapter 11" (*Id.*), (iii) that the Debtor has no business or operations (*Id.*, p. 5)), (iv) that the Debtor filed the case in bad faith ("Motion to Dismiss, *passim*; Motion to Lift Stay, p. 4), (v) that the Debtor filed its case only to obtain a litigation advantage (Motion to Lift Stay, p. 4), and (vi) that if the State Court Action is litigated in state court, the Plaintiffs will be paid in full (*Id.*).

5. When the correct law is applied to the actual facts, it is clear the motions must be denied.

## Background

6. On April 25, 2022 (the "Petition Date"), Memory Lane filed a voluntary petition for relief under subchapter V of chapter 11, title 11, United States Code (the "Bankruptcy Code"). Memory Lane is a debtor in possession pursuant to section 1182(2) of the Bankruptcy Code with the rights and powers conferred by section 1184 of the Bankruptcy Code. Ronald J. Friedman was appointed as the subchapter V trustee pursuant to section 1183.

7. The Debtor provides services to the music publishing industry including song registration, royalty collection, distribution, and negotiations and licensing. Additional information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the *Declaration of Mark Spier Pursuant to Local Bankruptcy Rule 1007-4* dated April 25, 2022 [doc. 2] (the "Spier Declaration").

8. On June 14, 2022, Scion Three Music LLC ("Scion Three"), Scion Four Music LLC ("Scion Four") and Larry Spier Music LLC ("LSM", and together with Scion Three and Scion Four, the "Subsidiary Debtors", and together with Memory Lane, the "Debtors")[1] each filed voluntary petitions for relief under subchapter V of chapter 11 of the Bankruptcy Code.[2]

---

[1] Scion Three's case is # 22-71407 (AST); Scion four's case is # 22-71410 (AST); LSM's case is # 22-71418 (AST).

[2] The Subsidiary Debtors are "small business debtors" and eligible for subchapter V treatment. *See* 11 U.S.C. § 1882(1). At the time of filing, pursuant to 11 U.S.C. § 101(51D)(A), "small business debtor" meant "a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate *noncontingent liquidated secured and unsecured debts* as of the date of the filing of the petition or the date of the order for relief in an amount not more than $2,725,625 (*excluding debts owed to 1 or more affiliates or insiders*) not less than 50 percent of which arose from the commercial or business activities of the debtor; …" (emphasis added). Excluding contingent, unliquidated debts listed in the Schedules, and intercompany or affiliate debts, the aggregate debts of the four Debtors are approximately $2,403,085. A summary of the non-contingent, non-insider debts of the four Debtors is attached as Exhibit 1. On June 21, 2022, President

Memory Lane holds 100% of the member interests in each of the Subsidiary Debtors. Ronald J. Friedman was appointed as the subchapter V trustee. Memory Lane has filed a motion for joint administration of the Debtors' cases [doc. 37].

## Factual Background

### A. The Defendants in the State Court Action

9. Mark Spier is a 50% member, manager and president of the Debtor. The other 50% member is Spier Music Holding LLC. Mr. Spier makes all decisions about the management and operations of Memory Lane.

10. Scion Three owns and administers copyrights in the U.S. for songwriters and publishers affiliated with BMI. Scion Four owns and administers copyrights in the U.S. for songwriters and publishers affiliated with SESAC. ASCAP, BMI and SESAC are performing rights organizations. LSM owns and administers copyrights in the U.S. for songwriters and publishers affiliated with ASCAP.

11. Memory Lane and the three Subsidiary Debtors are defendants in the State Court Action. The non-debtor defendants are Mr. Spier, Royalty Solutions Corp. ("Royalty Solutions"), Princess Lola Music LLC ("Princess Lola") and Adaken Music Holding LLC ("Adaken") (collectively, the "Non-Debtor Defendants"). Royalty Solutions is owned 51% by Mr. Spier and 49% by a family trust and Mr. Spier's two children. Royalty Solutions performs royalty processing, licensing and back-end support services, primarily for record labels. Princess Lola and Adaken are each 50% owned by Logan Drew Music LLC and 50% owned by unrelated third parties. Mr. Spier is the manager of Logan Drew Music. Princess Lola and Adaken are

---

Biden signed the Bankruptcy Threshold and Technical Adjustments Act into law, which extends the increase in the subchapter V debt limit for eligible businesses to $7.5 million for another two years.

holding companies that own copyrights. Memory Lane administers those copyrights in foreign territories on their behalf in exchange for a fee.

### B. The State Court Action

12. On July 18, 2019, plaintiffs William Bunch, Lisa Bunch, Lynne Bunch, Susan Anthony, Jeanne Rains, Gary Rowles and The ASCAP Foundation (collectively, "Plaintiffs") filed the State Court Action against Memory Lane, Spier (together with Memory Lane, the "Original Defendants") and certain John and Jane Does. The State Court Action alleges claims for (1) breach of contract; (2) breach of fiduciary duty; and (3) an equitable accounting. Distilled to its essence, the State Court Action alleges that Memory Lane failed to remit royalties contractually due Plaintiffs, that such failure also amounted to an alleged breach of fiduciary duty (for which Plaintiffs seek punitive damages), and that Spier and the New Defendants (defined *infra*) should be held liable to Plaintiffs as alleged alter-egos of Memory Lane.

13. The Plaintiffs failed to prosecute the State Court Action for many months, flouted their discovery obligations and disobeyed at least one Supreme Court Order, all of which ultimately resulted in the State Court Action being dismissed in 2021 upon the application of Memory Lane and Spier.

14. In late 2021, after the Supreme Court dismissed the State Court Action, the Plaintiffs engaged new counsel and sought and obtained leave to reinstate the State Court Action. Shortly thereafter, the Plaintiffs sought leave to replace the John and Jane Doe defendants with certain alleged alter-egos of Memory Lane – LSM, Scion Three, Scion Four, Royalty Solutions, Princess Lola and Adaken (collectively the "New Defendants," and together with the Original Defendants, the "Defendants").

15.     On February 28, 2022, the New Defendants filed a motion to dismiss all the claims asserted against them under CPLR 3211(a)(7).  At the same time, Spier filed a motion to dismiss all the claims asserted against him under CPLR 3211(a)(7), and Memory Lane filed a motion to dismiss all but the breach of contract claim asserted against it under CPLR 3211(a)(7).

16.     Plaintiffs opposed the motions to dismiss by propounding a proposed amended complaint.  The Defendants agreed not to oppose the proposed amended complaint, but elected to treat their motion to dismiss as addressing the legal sufficiency of the proposed amended complaint.  In addition, Spier and Royalty Solutions – while vehemently disputing the veracity of the newly made allegations against them – did not contest that the proposed amended complaint adequately stated claims against them.  The remaining Defendants proceeded with their motion to dismiss.  The Supreme Court dismissed the breach of fiduciary duty and punitive damage claims, and took the remainder of the motion to dismiss on submission.

C.     **Schedules and Creditors**

17.     The Debtors' schedules reflect scores of creditors in addition to the Plaintiffs.  As set forth in n.1 *supra,* the aggregate non-contingent, liquidated debt of the four Debtors is approximately $2,403,085, excluding the contingent amount claimed by the Plaintiffs.[3]  The schedules reflect 49 non-insider creditors of Memory Lane, 15 non-insider creditors of Scion Three, 42 non-insider creditors of Scion Four, and 88 non-insider creditors of LSM.  *See* Exhibit 1.  Excluding the Plaintiffs' litigation claims, and including once the claim of Pryor Cashman for which the Debtors have joint and several liability and the claim of Boston Scally Punk for which the Subsidiary Debtors are jointly and severally liable, there are 194 separate creditors.

---

[3]   In their amended complaint, Plaintiffs seek actual damages of not less than $500,000 and punitive damages of not less than $2,000,000.  The state court judge has dismissed the punitive damages claim.

## Argument

18. The Debtors do not dispute that the pendency of the State Court Action was a factor in the chapter 11 filings. However, contrary to the Plaintiffs' contentions, the chapter 11 cases were filed to resolve claims of many creditors and were driven primarily by cash flow considerations. As stated by Mr. Spier,

> Between 2000 and 2010, the music publishing industry changed dramatically. Major music publishers started acquiring music copyrights and music publishing companies. As a result of these changes, Memory Lane started losing clients and/or reducing the commissions it received in order to retain their clients. The changes started to effect Memory Lane's bottom line around 2008. In 2012, Memory Lane lost its biggest client that represented 40% of its profit. In the years that followed, several other large clients left Memory Lane for better deals. By 2016, Memory Lane's revenue and profit had reduced by over 50%. Memory Lane was slow to respond to the loss of clients and maintained a larger than needed payroll with the hope in acquiring new clients. The new clients never materialized enough to offset the large payroll. The losses started to mount, and Memory Lane started to not pay some of its songwriters due to the lack of available cash.

Spier Declaration, ¶ 6. Memory Lane had also incurred over $150,000 in legal fees in the State Court Action. *Id.*, ¶ 8.

19. The Debtors submit there are no grounds to grant any of the Plaintiffs' motions, which should be denied. The Debtors should be given the same opportunities that every other debtor has to reorganize.

### A. The Motion to Dismiss

20. A bankruptcy case may be dismissed for cause pursuant to section 1112(b) of the Bankruptcy Code. Case law has held that bad faith can constitute cause. *See In re HBA East*, 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988). The moving party bears the burden of proving by a preponderance of evidence that cause exists for dismissal under 11 U.S.C. § 1112(b). *In re*

*Woodbrook Assocs.*, 19 F.3d 312 (7th Cir. 1994). If the basis for the motion is bad faith, then the moving party must make a *prima facie* showing of bad faith. *In re Paolini*, 312 B.R. 295 (Bankr. E.D. Va. 2004). The Plaintiffs must offer proof, as opposed to conclusory statements by their attorneys, in support of the relief they seek. Here, the Plaintiffs' motion is based entirely on allegations which, far from being supported by any proof, are simply stated by their attorneys and, for the most part, are misstatements of fact or erroneous statements of law.

21.   Plaintiffs seek dismissal on the grounds that Memory Lane's petition was filed in bad faith. Specifically, they allege that the only reason Memory Lane filed was to obtain an advantage in the litigation of the State Court Action (Motion to Dismiss, p. 3), that the filing was motivated by the interests of the other Defendants (*Id.*), and that because the Plaintiffs' claims represent approximately 81% of Memory Lane's creditors and no other creditors were pressuring Memory Lane for payment (*Id.*, p. 4), there was no legitimate reason to file.

22.   No single fact is determinative of bad faith, but the court must examine the facts and circumstances of each case in light of several established guidelines. *In re HBA East*, 87 B.R. at 259; *see also, In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986). The Second Circuit has set forth the factors to be considered on a bad faith dismissal motion:

   (a)   the debtor has only one asset;

   (b)   the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

   (c)   the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

   (d)   the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

   (e)   the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

      (f)      the debtor has little or no cash flow;

      (g)      the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

      (h)      the debtor has no employees.

*In re C-TC 9th Ave. Partnership*, 113 F.3d 1304, 1311 (2d Cir. 1997). One thing that is glaringly apparent from this list of factors, as well as from other bad faith dismissal cases, is that these cases involve situations where a debtor files a bankruptcy petition to frustrate a <u>secured</u> creditor from pursuing its state law lien foreclosure rights in a situation where the debtor's only real asset is the secured creditor's collateral, and the debtor's primary, if not only, creditor is the secured creditor. In such a case, unsecured creditors are not harmed by the dismissal because the secured creditor will simply pursue its state law foreclosure rights with respect to its collateral, which rights are superior to those of unsecured creditors.

      23.      In this case, the Plaintiffs are not secured creditors pursuing state law rights to foreclose on their collateral. Rather, they are merely *unsecured* creditors seeking to pursue the Debtors' unencumbered assets and their right to those assets is not superior to the rights of any of the Debtors' other unsecured creditors. If Memory Lane's case is dismissed, the Subsidiary Debtors' cases will still be before this Court, and they will still be defendants in the State Court Action, which is stayed. There is no benefit at all to be obtained by dismissing Memory Lane's case.

      24.      Moreover, Plaintiffs' alleged grounds for bad faith are simply wrong. First, it is apparent from the Schedules and Plaintiffs' own admission in the motion that Memory Lane has many unsecured creditors other than the Plaintiffs. The fact that Memory Lane may have reached payment arrangements with 15 "large" unsecured creditors or that they represent roughly 20% of Memory Lane's debts is immaterial. Plaintiffs also ignore completely that

Memory Lane has a partially secured creditor that is owed $252,700 as of the Petition Date.  *See* Schedule D, part 2.1 [doc. 1].  This is far from simply a two-party dispute.

25.     Second, there is no requirement that creditors must be pressuring a debtor for payment before a debtor can file for bankruptcy.  Every debt can be fixed, liquidated and non-contingent, and if a debtor cannot satisfy the debts without reorganizing, it has the absolute right to do so.

26.     Third, the Plaintiffs have claims against the four Debtors, which can and should be resolved in this Court.  These are core matters over which the bankruptcy court has jurisdiction.[4]

27.     The fact that a bankruptcy filing was intended in part to gain relief from a state court action does not constitute bad faith.  *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986); *see In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1287 (2d Cir.1990).  Many bankruptcy filings are preceded by some sort of state court action commenced against the debtor.  "It is quite common and not inappropriate for a debtor to use chapter 11 to obtain a respite from a creditor or creditors aggressively seeking to collect on a debt, even when execution is imminent, provided that financial rehabilitation is possible."  *In re McStay*, 82 B.R. 763, 768 (Bankr. E.D. Pa. 1988), citing *In re Greene*, 57 B.R. 272, 275 (Bankr. S.D.N.Y. 1986); *In re Warner*, 30 B.R. 528 (Bankr. App. Panel 9th Cir. 1983).  If the mere fact that state court litigation was commenced prior to a bankruptcy filing means that the filing was a bad faith litigation tactic, then virtually every bankruptcy petition would be subject to dismissal.  As the Second Circuit observed:

---

[4]   Memory Lane filed a motion on May 2, 2022 [doc. 24] for an order extending the stay to the other Defendants (the "Motion to Extend Stay").  This was before the Subsidiary Defendants filed their cases.  As a result, the Motion to Extend Stay now pertains only to Mr. Spier, Royalty Solutions, Princess Lola and Adaken.  If the Court grants that motion as to the four Non-Debtor Defendants, then all of the Plaintiff's claims – the direct claim against Memory Lane and the dependent alter-ego claims against the other Defendants – will be before this Court.  Even if the Court were to sever the claims of the Non-Debtor Defendants, the claims against the Debtors must be resolved in this Court.  *See* 2 U.S.C. § 157(b)(2)(B).

> [f]iling a bankruptcy petition with the intent to frustrate creditors does not by itself "establish an absence of intent to seek rehabilitation." Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense, be "frustrated" when their debtor files a bankruptcy petition. In reality, there is "a considerable gap between delaying creditors, even second creditors, on the eve of foreclosure and the concept of abuse of judicial purpose" (citations omitted).

*In re Cohoes Ind. Terminal*, 931 F.2d 222, 228 (2d Cir, 1991).

28. This is not the case where the only creditors are the Plaintiffs, the debtor is paying all of its other debts as they come due, and there are no cash flow problems. To the contrary, the significant amount of legal fees being incurred by the Debtors in the State Court Action made it impossible for them to honor their agreements with other creditors and operate in the ordinary course while paying their debts. The record before the Court amply shows that Memory Lane had valid and legitimate reasons to seek protection from its creditors under chapter 11.

### B. The Motion to Lift Stay

29. The Plaintiffs' Motion to Lift Stay rests on similar fundamental misunderstandings as the Motion to Dismiss. First, this is no longer a single debtor case. Memory Lane, Scion Three, Scion Four and LSM are all debtors, and the State Court Action is automatically stayed as to them. Even if the stay is lifted as against Memory Lane, the litigation cannot proceed against the Subsidiary Debtors, and if Memory Lane's Motion to Extend Stay to the Non-Debtor Defendants is granted, lifting the stay to proceed against Memory Lane will be fruitless.

30. Turning to an analysis of relevant factors to be considered under *In re Sonnax Indus., Inc.*, 907 F.2d at 1286, there is no cause to lift the stay. The Plaintiffs assert that they will be prejudiced if the stay remains in place. Citing factor 9, the balance of harms, the

Plaintiffs argue: "If the stay remains in place, the *Bunch* Creditors will either have to wait substantially longer to be paid the monies owed than they would have had [Memory Lane] not filed the petition or, as [Memory Lane] admittedly hopes, accept substantially less than the amount that [Memory Lane] effectively stole from them." Motion to Lift Stay, p. 4.

31. This misses the point. Ignoring the rhetoric, implicit in this argument is that if stay relief is granted and the Plaintiffs are allowed to proceed in state court, they will not only get a judgment but will be able to collect. The first is by no means assured, and the second is wrong. If the State Court Action proceeds, all Plaintiffs can hope to achieve is a judgment that liquidates the claim. They cannot collect against any of the Debtors. The liquidated claim would be an allowed claim in the chapter 11 case, subject to payment through distributions under a confirmed chapter 11 plan.

32. Contrary to the Plaintiffs' contention, Mr. Spier did not say in his Declaration that Memory Lane's "goal in filing the petition is to use the automatic stay to stop the *Bunch* case in its tracks." Motion to Lift Stay, p. 4. What Mr. Spier actually said was: "The Debtor intends to file a motion in the Bankruptcy Court to stay the litigation with the SGA. The Debtor is hopeful that the respite provided under the Bankruptcy Code will enable it to arrive at a fair and reasonable resolution of creditors' claims and apply funds that otherwise would be spent on litigation." Spier Declaration, ¶ 9. As noted *supra*, the litigation fees incurred by the Debtors prepetition impeded their ability to pay creditors and operate in the ordinary course. These are common and non-controversial reasons to file under chapter 11. And, Memory Lane did exactly what Mr. Spier said it would – it filed the Motion to Extend Stay.

33. Granting relief from stay would not result in a complete resolution of the issues. As discussed *supra*, the Subsidiary Debtors' cases would still be pending in this Court,

regardless of how the Court rules on the Motion to Extend Stay.  The procedural posture of the cases also means that judicial economy would not be served because the litigation would at best not completely resolve the claims, and at worst the claims would be litigated in two courts. Moreover, the fact that Memory Lane's other creditors are not clamoring for payment and are "satisfied"[5] does not mean they would not be prejudiced by having the State Court Action litigated in Supreme Court.  To the contrary, the increase in administrative costs by having to try the case in state court directly and inversely affects the amount available to distribute to creditors: as one goes up, the other goes down.  Factors 1, 3, 4 and 6 do not support lifting the stay.

### C. The Motion for Abstention

34. Last, the Plaintiffs ask this Court to abstain from hearing the State Court Action under 28 U.S.C. § 1334(c)(2) (mandatory abstention) and, alternatively under 28 U.S.C. § 1334(c)(1) (permissive abstention).

35. 28 U.S.C. § 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

36. "Four factors come into play in evaluating § 1334(c)(2) timeliness: (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bank-

---

[5] The Plaintiffs seem to equate pre-petition resolution of these claims with "satisfaction," but "satisfaction" has multiple meanings, and does not necessarily follow from "resolution."  All that can be said is that the creditors and Memory Lane agree on the amounts.

ruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Krys v. Klejna*, 658 Fed. Appx. 1, *3 (2d Cir. 2016), quoting *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011).

37. Abstaining from hearing matters over which a federal court has jurisdiction is the "exception, not the rule." *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992), quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). "The general rule is that if a matter falls within a bankruptcy court's 'core' jurisdiction, then the court should decide it." *In re Indianapolis Downs*, 462 B.R. 104, 114 (Bankr. D. Del. 2011), vacated on other grounds, *In re Id Liquidation One*, 2013 Bankr LEXIS 5874 [Bankr D Del July 16, 2013, Nos. 11-11046 (BLS), 1938]; *see also In re Luongo*, 259 F.3d 323, 330 (5th Cir. 2001), citing *In re Smith*, 122 B.R. 130, 133-34 (Bankr. M.D. Fla. 1990) (same); *In re Garland & Lachance Constr. Co.*, 144 B.R. 586, 594 (Bankr. D.N.H. 1991) ("abstention is normally inappropriate if a matter is a core proceeding"); *In re Altegrity*, 544 B.R. 772, 777-78 (Bankr. D. Del. 2016) (bankruptcy court should exercise its discretionary authority to abstain sparingly). In fact, permissive abstention should rarely be invoked. *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992).

38. The mandatory abstention provision of section 1334(c)(2) is subject to the overarching principle that such abstention should only be granted "if that will not adversely affect the bankruptcy proceedings." *Falck Props., LLC v. Walnut Capital Real Estate Servs. (In re Brownsville Prop. Corp.)*, 473 B.R. 89, 93 n.4 (Bankr. W.D. Pa. 2012), quoting *Stoe v. Flaherty*, 436 F.3d 209, 214 (3d Cir. 2006). Moreover, "where a matter constitutes a core proceeding, the mandatory abstention provisions of section 1334(c)(2) are inapplicable." *In re Petrie Retail,*

*Inc.*, 304 F.3d 223, 232 (2d Cir. 2002). *See also, BGFI GP I LLC v. Prieto (In re WP Realty Acquisition III LLC)*, 626 B.R. 154, 159 (Bankr. S.D.N.Y. 2021). Mandatory abstention does not apply to core proceedings. *Jet Sales W. LLC v. City of El Paso (In re Jet Sales W. LLC)*, 2021 Bankr LEXIS 3507, at *13 [Bankr D. N.M. Dec. 22, 2021, No. 20-12179-ta11, Adv. No. 21-1014-t]. *See also, In re Lowenbraun*, 453 F.3d 314, 320 (6th Cir. 2006) (for mandatory abstention to apply, the proceeding must be non-core); *In re Telluride Income Growth, L.P.*, 364 B.R. 390, 398 (10th Cir. BAP 2007) (same); *In re Cashco, Inc.*, 614 B.R. 715, 720 (Bankr. D.N.M. 2020) (same); *In re Gregory Rock House Ranch, LLC*, 339 B.R. 249, 252-53 (Bankr. D.N.M. 2006).[6]

        39.      Under these standards, mandatory abstention from adjudicating the claims asserted in the State Court Action is not appropriate. First, allowing the State Court Action to proceed would unquestionably adversely affect the bankruptcy proceedings. Absent extension, Memory Lane's plan will be filed by July 25, 2022 in accordance with 11 U.S.C. § 1889(b).[7] The Debtors intend to file a joint plan that is predicated on the substantive consolidation of the Subsidiary Debtors into Memory Lane. If the Debtors are forced to wait for trial to be scheduled and conducted, and the matter adjudicated in state court, it will delay confirmation of a plan and "prolong the administration or liquidation of the estate." *See Krys v. Klejna*, 658 Fed. Appx. 1, *3. And, as discussed *supra*, any payment to the Plaintiffs would still be made pursuant to a plan. Conversely, the Debtors will be able to more rapidly estimate or adjudicate the claims in this Court to facilitate a swift confirmation process. All of the nearly 190 other creditors should

---

[6]    *Cf.* 28 U.S.C. § 157(b)(4) ("Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." The non-core proceedings referred to in section 157(b)(2)(B) are the "liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11."

[7]    The 90th day after the Petition Date is Sunday, July 24. *See* Bankruptcy Rule 9006(a)(3)(A).

not be forced to wait for their distributions while the Plaintiffs' case plays out on an unknown timetable in state court.[8]

40. Second, the claims asserted against Memory Lane, Scion Three, Scion Four and LSM are core matters. *See* 28 U.S.C. § 157(b)(2)(B) ("Core proceedings include, but are not limited to, … allowance or disallowance of claims against the estate … and estimation of claims … for the purposes of confirming a plan under chapter 11 …"). These claims should be resolved in this Court.[9]

41. Because federal courts have an obligation to exercise the jurisdiction properly given to them, "there is a presumption in favor of the exercise of federal jurisdiction and against abstention." *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004). Thus, "[t]he movant bears the burden of establishing that permissive abstention is warranted." *In re Residential Capital, LLC*, 515 B.R. 52, 67 (Bankr. S.D.N.Y. 2014). Here, the Plaintiffs do not provide any case law or authority to support their conclusory allegation that permissive abstention is appropriate because this Court does not have jurisdiction over the Non-Debtor Defendants. Similarly, the Plaintiffs have not sustained their burden to show why this Court should exercise its discretion and grant permissive abstention.

---

[8] The Plaintiffs assert that the State Court Action was ready for trial and the parties were preparing to disclose witnesses and exhibits. Motion for Abstention, ¶ 4. *See also* Motion to Extend Stay, ¶ 21. If the Court allows the State Court Action to proceed, the Supreme Court will first have to reschedule the pretrial conference, the parties will have to complete the pretrial tasks (at significant expense to the Debtors), and the case will need to be scheduled for trial. The Debtors will be able to confirm a plan long before the litigation concludes.

[9] If the Court does not grant the Motion to Extend Stay, to preserve its core jurisdiction the Court can sever the claims against Non-Debtor Defendants from the State Court Action. Alternatively, because the Court has related-to jurisdiction over those claims pursuant to 28 U.S.C. § 1334(b), it can decline Plaintiffs' request for permissive abstention under 28 U.S.C. § 1334(c)(1).

**WHEREFORE**, the Debtor requests that the Court deny the Plaintiffs' motions, together with such other and further relief as is appropriate.

Dated:   New York, New York         RICH MICHAELSON MAGALIFF, LLP
         June 22, 2022                        Attorneys for the Debtor
                                                     By:

/s/ Howard P. Magaliff
HOWARD P. MAGALIFF
JEFFREY N. RICH
335 Madison Avenue, 9th Floor
New York, NY 10017
646.453.7851
*hmagaliff@r3mlaw.com*

**EXHIBIT 1**

{00041919v2 }

|  | MLMG | LSM | S3M | S4M |
|---|---|---|---|---|
| Schdules: | | | | |
| Secured | $ 252,700.85 | | | |
| Unsecured | $ 587,004.40 | $ 1,467,025.10 | $ 1,331,398.59 | $ 1,265,076.73 |
| Pryor Cashman | $ 84,691.15 | | | |
| Trulove Music entered as $1,737.58, s/be $2,105.24 | $ 367.66 | | | |
| Minder Music entered as $503.32, s/be $503.52 | $ 0.20 | | | |
| Removing duplications: | | | | |
| Boston Scully | | $ (595,485.45) | | $ (595,485.45) |
| DeRose Music | | $ (303,461.53) | $ (303,461.53) | $ (303,461.53) |
| Kudu Music | | $ (68,438.08) | $ (68,438.08) | $ (68,438.08) |
| Harry Ruby | | $ (58,454.45) | $ (58,454.45) | $ (58,454.45) |
| Harold Adamson | | $ (35,381.65) | $ (35,381.65) | $ (35,381.65) |
| Ted Varnick | | $ (4,323.11) | $ (4,323.11) | $ (4,323.11) |
| Correction of typo on Elena Alvarez | | $ (3.00) | | |
| Creditor omitted: Linda Darrell | | $ 134.62 | | |
| Creditor omitted: Authority Zero | | | | $ 16,264.63 |
| Correction of outstanding amount: Maj Music | | | | $ (428.69) |
|  | $ 924,764.26 | $ 401,612.45 | $ 861,339.77 | $ 215,368.40 |
| Creditors | 49 | 88 | 15 | 42 |