RICH MICHAELSON MAGALIFF LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
646.453.7851
Jeffrey N. Rich
Howard P. Magaliff

*Attorneys for the Debtors*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

In re:                                                      :
                                                            :       Chapter 11
MEMORY LANE MUSIC GROUP LLC,                                :       Case No. 22-70838-AST
                                                            :
                                    Debtors.                :       Jointly Administered

------------------------------------------------------------ x

## DEBTORS' JOINT SUBCHAPTER V PLAN OF REORGANIZATION

The Debtors propose this joint Plan of Reorganization for the resolution of the outstanding Claims and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Although proposed jointly for administrative purposes, the Plan is premised on the substantive consolidation of all of the Debtors and, as such constitutes a single plan for the Debtors.

## ARTICLE I
## DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires). Terms used in this Plan that are defined in the Bankruptcy Code shall have the meaning assigned therein, unless specifically defined herein.

1.1.     *"Administrative Claims"* means all costs and expenses of administration of the Chapter 11 Cases Allowed under §§ 503(b) or 330(a) of the Bankruptcy Code and that are entitled to priority under § 507(a)(2) of the Bankruptcy Code.

1.2.     *"Allowed"* means that portion of a Claim that (i) has been timely filed with the Bankruptcy Court and is liquidated in amount and has not been objected to, (ii) has been listed by the respective Debtor in its Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

1.3.     *"Avoidance Claim"* means any cause of action under §§ 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or non-bankruptcy law.

1.4.     *"Ballot"* means the form of ballot transmitted with the Plan to those entitled to vote on the Plan, on which they may vote to accept or reject the Plan pursuant to Bankruptcy Rule 3018 and § 1126 of the Bankruptcy Code.

1.5.    *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* in effect for these Chapter 11 Cases.

1.6.    *"Bankruptcy Court"* means the United States Bankruptcy Court for the Eastern District of New York presiding over the Chapter 11 Cases.

1.7.    *"Bankruptcy Rule(s)"* means the Federal Rules of Bankruptcy Procedure as applicable to a case under the Bankruptcy Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto, in effect for these Chapter 11 Cases.

1.8.    *"Business Day"* means any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

1.9.    *"Causes of Action"* means any claims, cross claims, third-party claims, interests, damages, judgments, remedies, causes of action, controversies, debts, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties and franchises of any kind or character whatsoever (including those of the Debtors, the Reorganized Debtors, or their Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, asserted or assertable directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Filing Dates, in contract, tort, law, equity, pursuant to any other theory of law or otherwise.  Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to § 362 or chapter 5 of the Bankruptcy Code; (d) such claims and defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in § 558 of the Bankruptcy Code; (e) any state or foreign law preferential or fraudulent transfer or similar claim, and (f) any Avoidance Action.

1.10.    *"Cash"* means legal tender of the United States of America or cash equivalents.

1.11.    *"Chapter 11 Cases*" means the chapter 11 cases of the Debtors procedurally consolidated under Case No. 22-70838-AST.

1.12.    *"Claim"* is defined in § 101(5) of the Bankruptcy Code, and shall include, without limitation, any claims of whatever type or description against the Debtors, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the Debtors arising out of the rejection of executory contracts, any claim against the Debtors arising from the recovery of property under §§ 550 or 553 of the Bankruptcy Code and any claim against the Debtors that does not arise until after the commencement of the Chapter 11 Case for a tax entitled to priority under § 507(a) of the Bankruptcy Code.

1.13.    *"Class"* means a category of Holders of Claims as described in Article V.

1.14.    *"Confirmation Date"* means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.15.    *"Confirmation Order"* means the order of the Bankruptcy Court pursuant to § 1129 of the Bankruptcy Code confirming the Plan.

1.16.    *"Debtor Released Parties"* shall have the meaning set forth in Section 12.2.

1.17.    *"Debtors"* means Memory Lane, Scion Three, Scion Four and Larry Spier.

1.18.    *"Disputed Claim"* means (a) any Claim or portion of a Claim (other than an Allowed Claim) which is scheduled by the Debtors, or any of them, as disputed, contingent or unliquidated; or (b) a Claim which has been filed pursuant to § 501(a) of the Bankruptcy Code as unliquidated or contingent; or (c) a Claim which has been filed pursuant to § 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof has been interposed within the time limitation by the Bankruptcy Code and Bankruptcy Rules, by an Order of the Court, or by this Plan, which objection has not been determined, in whole or in part by a Final Order.

1.19.    *"Distribution"* means a payment of Cash required under this Plan to be distributed to the Holders of Allowed Claims.

1.20.    *"Distribution Address"* means the address set forth (i) on the Schedules filed with the Bankruptcy Court, (ii) on the books and records of the Debtors, or (iii) in a letter of transmittal by a Holder of an Allowed Claim, unless the Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on the foregoing listed documents.

1.21.    *"Distribution Date"* means the date of the initial distribution to the Holders of Allowed Class 3 Claims and each quarterly distribution date thereafter.

1.22.    *"Effective Date"* means the first Business Day occurring after the Confirmation Order becomes a Final Order.

1.23.    *"Estates"* means the estates of the Debtors pursuant to §§ 541 and 1115 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases and subsequent to the Confirmation Date, the Estate of Memory Lane Music Group LLC.

1.24.    *"Filing Date"* means April 25, 2022 with respect to Memory Lane and June 14, 2022 with respect to Scion Three, Scion Four and Larry Spier.

1.25.    *"Final Decree"* has the meaning given to it Bankruptcy Rule 3022.

1.26.    *"Final Order"* means an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for review or rehearing is pending.

1.27.    *"Holder"* means the legal or beneficial holder of a Claim (and, if used in conjunction with a Class or type of Claim, means a holder of a Claim in such Class or of such type).

1.28.    *"Impaired"* means a Claim or Class that is impaired within the meaning of § 1124 of the Bankruptcy Code.

1.29.    *"Intercompany Claim"* means any Claim against a Debtor held by another Debtor.

1.30.    *"Interests"* means the equity interests in the Debtors owned by the Debtors' respective members.

1.31.    *"Larry Spier"* means Larry Spier Music LLC.

1.32.    *"Lien"* has the meaning given to it in § 101(37) of the Bankruptcy Code, *i.e.*, a charge against property to secure payment of a debt or performance of an obligation.

1.33.    *"Memory Lane"* means Memory Lane Music Group LLC.

1.34.    *"Plan"* means this Subchapter V Plan dated July 25, 2022 of the Debtors, and any amendments hereto or modifications hereof made in accordance with the provisions of the Bankruptcy Code.

1.35.    *"Priority Claim"* means a Claim, other than an Administrative Claim or Priority Tax Claim, that is entitled to priority under § 507 of the Bankruptcy Code.

1.36.    *"Priority Tax Claim"* means a claim against a Debtor to the extent entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

1.37.    *"Professional Fee Claim"* means any Administrative Claim of a professional subject to allowance under §§ 330 or 503 of the Bankruptcy Code or an order of the Bankruptcy Court.

1.38.    *"Professionals"* means those persons or entities: (a) retained by the Debtors pursuant to an order of the Bankruptcy Court in accordance with § 327 of the Bankruptcy Code entitled to compensation for services rendered prior to the Effective Date pursuant to §§ 327, 328, 330 or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to §§ 503(b)(2) or (4) of the Bankruptcy Code.

1.39.    *"Pro Rata"* means proportionally according to the total amount of Allowed Claims in a particular Class.

1.40.    *"Released Parties"* shall have the meaning set forth in section 12.2 hereof.

1.41.    *"Reorganized Debtors"* means the Debtors on and after the Effective Date.

1.42.    *"Reserve Fund*" shall be a fund which shall be established by the Reorganized Debtors after the Confirmation Date, which shall be equal to a sum sufficient to pay Disputed Claims which would have been paid under the Plan but for the dispute as either claimed by the creditor or determined by the Court.

1.43.    *"Schedules"* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors as required by § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments thereto.

1.44.    *"Scion Four"* means Scion Four Music LLC.

1.45.   *"Scion Three"* means Scion Three Music LLC.

1.46.   *"Secured Claim"* means a claim secured by a Lien on property of a Debtor's Estate to the extent of the value of such collateral, as determined in accordance with § 506(a) of the Bankruptcy Code or, in the event such claim is subject to setoff under § 553 of the Bankruptcy Code, to the extent of such setoff.

1.47.   *"State Court Action"* means the action pending in the in Supreme Court, New York County entitled *William Bunch, et al. v. Memory Lane Music Group LLC, et al.*, Index No. 654117/2019.

1.48.   *"Subchapter V Trustee"* means Ronald Friedman as the court appointed and duly qualified Chapter 11 Subchapter V Trustee in these Chapter 11 Cases.

1.49.   *"Subsidiary Debtors"* means Scion Three, Scion Four and Larry Spier.

1.50.   *"Unimpaired"* means, with respect to any Class, that such Class is not Impaired.

1.51.   *"Unsecured Claim"* means any Claim that is not an Administrative Claim, Priority Claim or Secured Claim.

## ARTICLE II
## BACKGROUND

2.1.   <u>Information Regarding the Debtors</u>

Each of the Debtors is a New York limited liability company.  Memory Lane provides services to the music publishing industry including song registration, royalty collection, distribution, and negotiations and licensing.  A music publisher is a person or an organization that is authorized to license the copyrighted use of a particular musical work.  Publishers sign contracts with songwriters to manage their composition rights and maximize the cash flows.  The music publisher can either own the copyright for the life of the copyright or administer the copyright for the copyright owner for a shorter period of time.  Publishers receive a percentage of the earnings between 10–50% as commission for their services.

Memory Lane's subsidiaries include Scion Three, Scion Four and Larry Spier, and are in the music publishing business.  Each company represents different areas of music publishing.  Larry Spier represents songwriters that are member of ASCAP, Scion Three represents songwriters who are members of BMI and Scion Four represents members that are members of SESAC.

Memory Lane is a third-generation music publishing company founded in 1923 by Larry Spier, Sr.  Between 2000 and 2010, the music publishing industry changed dramatically.  Major music publishers started acquiring music copyrights and music publishing companies.  As a result of these changes, Memory Lane started losing clients and/or reducing the commissions, it received in order to retain their clients.  The changes started to effect Memory Lane's bottom line around 2008.  In 2012, Memory Lane lost its biggest client that represented 40% of its profit.  In the years that followed, several other large clients left Memory Lane for better deals.  By 2016, Memory Lane's revenue and profit had reduced by over 50%.  Memory Lane was slow to

respond to the loss of clients and maintained a larger than needed payroll with the hope in acquiring new clients. The new clients never materialized enough to offset the large payroll. The losses started to mount, and Memory Lane started not to pay some of its songwriters due to the lack of available cash.

In 2020, Memory Lane reduced its operating expenses and those of the Debtors by moving its operations to another publishing company to administer on a commission basis. In addition, in the period 2018 to 2020, Memory Lane negotiated payment plans with substantially all of its clients that were in arrears except for five that are all represented by the Songwriter's Guild of America (SGA).

SGA filed the State Court Action against Memory Lane Music on behalf of the five clients. In addition to Memory Lane, the defendants include Larry Spier, Scion Three and Scion Four, Mark Spier and three affiliated non-debtor entities. The State Court Action is a straightforward breach of contract lawsuit against Memory Lane. The claims against Spier and the other defendants are alter ego claims, which under well-settled New York law are not standalone causes of action. The alter-ego claims depend entirely upon the ability of the plaintiffs to pierce the corporate veil of Memory Lane, and cannot be prosecuted in the absence of Memory Lane.

## ARTICLE III
## DESCRIPTION OF ASSETS AND LIABILITIES

All four Debtors have administration agreements with the owners of song titles. On a quarterly basis, Atlas Music Corp. and Downtown Music Corp. which have been acting as rights collection agencies for the Debtors since 2020, remit funds to the Debtors. The Debtors then remit net royalties to the owners of the song titles and retain a commission. At various times, there are receivables from Atlas and Downton Music and payables to owners of song titles. In addition, Memory Lane owns song titles worth approximately $300,000 net.

While the administration agreements are not easily transferable and have little or no value, set forth below are the typical net revenues by Debtor:

| Description | Revenues |
| --- | --- |
| Scion Four | 5,074.71 |
| Scion Three | 31,459.86 |
| Larry Spier Music | 61,225.24 |
| Memory Lane | 10,497.80 |

Liquidated claims are as follows:

| Debtor | Secured Portion of Capital One Claim | Liquidated Claims Including Capital One |
| --- | --- | --- |
| Larry Spier Music LLC | | 532,095.97 |
| Scion Three Music LLC | 6,106.00 | 215,368.40 |
| Scion Four Music LLC | 33,440.82 | 864,082.07 |

| | | |
|---|---|---|
| Memory Lane Music LLC | | 1,071,392.55 |
| **Total** | **39,546.82** | **2,682,938.99** |

## ARTICLE IV
## SUBSTANTIVE CONSOLIDATION

The Plan is based on the substantive consolidation of the Debtors' assets and liabilities. Consolidating the assets and liabilities of different entities, one or more of which is a debtor in a case under the Bankruptcy Code, is referred to as "substantive consolidation." As a general principle, only the property of the estate of a debtor is administered in a case under the Bankruptcy Code. Corporate or other affiliation ordinarily will not support a bankruptcy court's jurisdiction over or administration of property of a debtor's affiliates. Notwithstanding this general principle, the doctrine of substantive consolidation may result in the treatment of a debtor and one or more of its affiliates as a single entity.

On July 13, 2022 the Debtors filed a motion for an order substantively consolidating the estates of the Subsidiary Debtors into Memory Lane. If the motion is granted, there will be a single estate for all purposes. The Debtors' assets and liabilities will be merged, all claims against the Subsidiary Debtors that are also filed or scheduled against Memory Lane will be disallowed and expunged as duplicative, and any and all Intercompany Claims will be extinguished. Any Claims against one or more of the Debtors based upon a guaranty, indemnity, co-signature, surety or otherwise shall be treated as a single Claim against the consolidated Estate of the Debtors and shall be entitled to Distributions under the Plan only with respect to such single Claim. Creditors with Allowed Claims will received Distributions from the single consolidated Estate.

## ARTICLE V
## DESIGNATION OF CLAIMS

All Claims against the Debtors, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, Allowed or not, shall be bound by the provisions of the Plan and are classified as follows:

5.1.    Classification of Claims.  Section 5.2 sets forth the designation of the Classes of Claims. A Claim is classified in a particular Class for voting and Distribution purposes only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim qualifies within the description of that different Class or Classes. Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class than a more generally defined Class, it shall be included in the more specifically defined Class. Each of the following sections of this Article V provides explanations of the different Claim classifications. Administrative Claims, Professional Fee Claims and Priority Tax Claims have not been classified and are excluded from the Classes set forth in section 5.2 in accordance with § 1123(a)(1) of the Bankruptcy Code. The treatment to be provided for Allowed Claims pursuant to this Plan and the consideration provided for herein shall be in full and final satisfaction, settlement, release and discharge of such respective Claims.

5.2.    <u>Classes</u>.  For purposes of the Plan, those persons holding Claims against the Debtor are grouped in accordance with § 1122 of the Bankruptcy Code as follows:

<u>Class 1</u> consists of Allowed Secured Claims.

<u>Class 2</u> consists of Allowed Priority Claims.

<u>Class 3</u> consists of Allowed General Unsecured Claims.

<u>Class 4</u> consists of Intercompany Claims.

<u>Class 5</u> consists of the equity interest in the Reorganized Debtors.

**ARTICLE VI**
**TREATMENT OF CLAIMS UNDER THE PLAN**

The treatment of claims under the Plan is as follows:

6.1.    <u>Unclassified Claims</u>.

(a)    <u>Allowed Administrative Claims other than Professional Fee Claims</u>. These Allowed Claims shall be paid in full, in Cash, upon the later of (i) allowance by the Bankruptcy Court, or (ii) on the initial Distribution Date, as the case may be, except that Allowed Administrative Claims incurred in the ordinary course shall be paid in the ordinary course.  The Debtors estimate Allowed Administrative Claims in the ordinary course to be $0.00.

(b)    <u>Allowed Professional Fee Claims</u>. Allowed Professional Fee Claims shall be paid in full, in Cash, upon the later of (i) allowance by the Bankruptcy Court, and (ii) on the initial Distribution Date, as the case may be.  The Debtors estimate Allowed Professional Fee Claims to be $90,000 (inclusive of the Subchapter V Trustee's fees).

(c)    <u>Priority Tax Claims</u>: Allowed Priority Tax Claims shall be paid in full, in Cash, on the Distribution Date.  The Debtor estimate Allowed Priority Tax Claims to be $0.00.

6.2.    <u>Classified Claims</u>

(a)    <u>Class 1</u>.  Class 1 consists of the Allowed Secured Claim of Capital One Bank. The Debtors are unaware of the existence of any other secured creditors.  On the Effective Date, Capital One shall receive an Allowed Secured Claim in the amount of $39,546.82 and the balance of Capital One's Claim against Memory Lane in the amount of $213,154.03 shall be reclassified as an Allowed General Unsecured Claim.  The Reorganized Debtors shall pay the Allowed Secured Claim of Capital One in equal quarterly installments commencing within 90 days after the Effective Date and continuing quarterly on the same calendar day or the first Business Day thereafter until such Claim is fully paid.  Class 1 is Impaired and Capital One may vote on the Plan.

(b)    <u>Class 2</u>.  There are no Priority Claims against the Debtors.  Class 2 Claims are not Impaired under the Plan, Holders are not entitled to vote on the Plan, and are deemed to accept the Plan.  There will be no payment to Class 2 under the Plan.

(c)    Class 3.  Class 3 consists of Allowed General Unsecured Claims.  Each Holder of an Allowed General Unsecured Claim shall receive a Pro Rata Distribution on the initial Distribution Date after Distributions have been made to all unclassified Claims and funding of the Post-Confirmation Reserve.  Class 3 Claims are Impaired and Holders are entitled to vote on the Plan.

The Debtors estimate that the Allowed General Unsecured Claims will be $2,643,392.17, and the Holders are projected to receive Pro Rata Distributions of approximately 12.7% of the Allowed amounts of their Claims.

(d)    Class 4.  Class 4 Claims shall be cancelled.  Class 4 is Impaired and is conclusively deemed to have rejected the Plan pursuant to § 1126(g) of the Bankruptcy Code.  Class 4 is not entitled to vote.

(e)    Class 5.  Class 5 consists of the Interests in the Debtors. The Holders of the Interests shall retain their Interests the Debtors and are not Impaired under the Plan.

## ARTICLE VII
## CONFIRMATION OF THE PLAN

7.1.    Voting by Impaired Classes of Claims.  The Holders of Claims in Class 1 and Class 3 are Impaired and entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited.  A Class of Claims Impaired under the Plan shall have accepted the Plan if (i) the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (ii) more than one-half in number of the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept the Plan.

7.2.    Acceptance by Impaired Classes of Claims.  If the Holders of Claims in Class 3 vote to accept the Plan, the Debtors will seek confirmation of the Plan under §§ 1191(a) and 1129(a), other than § 1129(a)(15) of the Bankruptcy Code.

7.3.    Rejection by Impaired Classes of Claims.  If the Holders of Claims in Class 1 or Class 3 do not vote to accept the Plan as set forth in Section 5.1, the Debtors will seek confirmation of this Plan pursuant to § 1191(b) of the Bankruptcy Code, which states that the Court may approve this Plan "if the plan does not discriminate unfairly, and is fair and equitable" with regard to each impaired class that has not accepted it.

## ARTICLE VIII
## MEANS FOR IMPLEMENTATION

8.1.    Means of Implementation.  The Reorganized Debtors shall make the first Distribution within thirty (30) days after the Effective Date, or as soon as reasonably practicable thereafter, with payments being made to Administrative and Class 1 Claims and a Pro Rata Distribution to the Holders of Class 3 Claims.  Thereafter, the Reorganized Debtors shall make quarterly Distributions for the five (5) year period from and after the initial Distribution on the same day of each month as the initial Distribution beginning three months after the date of the initial Distribution.

8.2.    <u>Dissolution and Joint and Several Liability</u>.  After the Effective Date, the Subsidiary Debtors shall continue in existence and be jointly and severally liable for the obligations of Memory Lane under the Plan.

## ARTICLE IX
## SUBCHAPTER V PROVISIONS

9.1.    <u>Liquidation Analysis</u>.

To confirm this Plan, the Court must find that all creditors will receive at least as much under the Plan as they would receive in a chapter 7 liquidation.  In a chapter 7 liquidation, the General Unsecured Creditors would receive about half of the amount of the Distributions they are to receive under this Plan.  Below are the liquidation analyses for each Debtor and the consolidated Debtors.

The rights administration business of the four Debtors is not salable and has no value. However, Memory Lane owns title to a portfolio of songs worth approximately $300,000 after selling costs.  The consolidated value of the Debtors on liquidation is therefore approximately $300,000.

A chapter 7 liquidation would incur additional administrative expenses, *i.e.* trustee commissions and additional attorneys' fees, all of which would diminish the ultimate distribution to Holders of Class 3 Unsecured Claims.  Furthermore, it would delay in the continued marshalling of the Debtors' assets and a delay in the distribution to the creditors.  Therefore, the Plan proposes to maximize the value of the assets in the most cost-efficient manner.

9.2.    <u>Projections</u>.

The Debtors anticipate having a minimum of $100,000 in Cash for distribution under the Plan as follows, with a minimum of $75,000 to be paid on the Effective Date.  The Debtors project, although do not guarantee that the total amount available to distribute to the Holders of Allowed Class 3 Claims over the five year Plan period will amount to approximately 12.7% of each creditor's claim.  The total estimated distribution to Class 3 General Unsecured Creditors, therefore, is $335,710.

A conservative estimate of annual net revenues of the Debtors combined is approximately $108,000.  Consolidated expenses are estimated to be $33,000 per annum.  The net funds available for distribution to the creditors under the Plan on an annual basis is estimated to be $75,000. Total creditor claims are estimated to be approximately $2.68 million of which approximately $40,000 are secured with the balance of approximately $2.64 million unsecured.  The Allowed Secured Claim of Capital One will be paid in year 1 with the remaining payments made over five years to Class 3 Claim Holders in the amount of approximately $336,000 or 12.7% of the total estimated amount of those Claims.

The amount to be distributed to the Holders of Allowed Claims over the life of the Plan represents that Debtors' projected disposable income beginning on the Effective Date.

## ARTICLE X
## PROVISIONS GOVERNING DISTRIBUTIONS

10.1.    <u>Manner of Distributions under the Plan</u>.  Distributions to be made pursuant to the Plan shall be made, at the option of the Reorganized Debtors, (a) by check drawn on a domestic bank and mailed to the Distribution Address of the recipient of the Distribution, or (b) by ACH, wire or other bank-to-bank electronic transfer.  Any Distribution required under the Plan shall be deemed to have been paid on the date when such payment is mailed or electronic transfer is initiated.

10.2.    <u>Rounding to the Nearest Dollar</u>.  Any provision of the Plan to the contrary notwithstanding, no payments of portions of a dollar will be made.  Whenever any payment of a portion of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down).

10.3.    <u>Unclaimed Cash</u>.  Except as otherwise provided herein, in the event any claimant fails to cash any Distribution check within six (6) months from the date such Distribution is made, such claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such Distribution was made shall be treated as a disallowed Claim.  All unclaimed Distributions shall be redistributed to the other Holders starting with the next Distribution.

## ARTICLE XI
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

11.1.    <u>Time for Objections to Claims</u>.  Objections to Claims may be filed by the Reorganized Debtors up to and including 60 days following the entry of the Confirmation Order.  With respect to Disputed Claims, the Reorganized Debtors will hold in the Reserve Fund such funds as would be necessary to make the required distribution on the Claim, as listed either in the Schedules or the filed proof(s) of Claim.

11.2.    <u>Resolution of Disputed Claims</u>.  Unless otherwise ordered by the Court, the Debtors or Reorganized Debtors shall litigate to judgment, settle or withdraw objections to Disputed Claims, in their sole discretion, without notice to any party in interest.

11.3.    <u>Payments</u>.  Payments and Distributions to each Holder of a Disputed Claim that ultimately becomes an allowed Claim by a Final Order shall be made in accordance with the Plan.  Such Distributions shall be made within 30 days after the later of the Distribution Date and the entry of a Final Order allowing such Claim.  Payments made in accordance with this section shall not include interest.  The amount of the initial Distribution to the Holder of a Disputed Claim that becomes an Allowed Claim shall be such that the Holder will have received the amount that it would have received if such Claim had been an Allowed Claim on the Effective Date.

# ARTICLE XII
## DISCHARGE AND INJUNCTION

12.1.   **Full and Final Satisfaction.  All payments, Distributions and transfers of cash or property under the Plan are in full and final satisfaction, settlement and release of all Claims related to the Chapter 11 Cases against the Debtors and their Estates, their agents, and professionals, of any nature whatsoever existing at the Confirmation Date, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court and providing that any exculpation of Debtors' agents or professional is subject to 11 U.S.C. § 1125(e), and nothing herein shall abrogate any applicable professional disciplinary rules.  Except as otherwise provided in the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, on the latest to occur of (a) the Effective Date, (b) the entry of a Final Order resolving all Claims in the Chapter 11 Case, and (c) the completion of Distributions to Holders of Allowed Claims in accordance with the Plan, all Claims against the Debtor shall be discharged and released in full upon the completion of the payments under the Plan.  All persons and entities shall be precluded from asserting against the Debtors and the Reorganized Debtors, any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the facts or legal bases therefor were known or existed prior to the Confirmation Date regardless of whether a proof of Claim was filed, whether the holder thereof voted to accept or reject the Plan or whether the Claim is an Allowed Claim.**

**Except as otherwise expressly provided in the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, all persons or entities who have held, hold or may hold Claims or any other debt or liability that is discharged, terminated or cancelled pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability that is terminated or cancelled pursuant to the Plan against the Debtors' Estates, or their income, properties or interests in properties, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against, the Estates, or their respective properties or interests in properties, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of  the Debtors, the Reorganized Debtors, or against their income, property or interests in property, and (d) except to the extent provided, permitted or preserved by section 553 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Debtors, the Reorganized Debtors, or against their property or interests in property, with respect to any such  Claim or other debt or liability that is discharged that is terminated or cancelled pursuant to the Plan, in respect of: (i) any actions taken prior to Confirmation of the Plan; (ii) the Plan; (iii) the authorization for or the formulation, negotiation, confirmation or consummation of the  Plan; (iv) distributions, payments or transfers made under and in accordance with the provisions of the Plan; or (v) acts performed pursuant to the Plan.  Nothing herein shall limit or impair the United States Government or any of its agencies from enforcement of the laws and regulations of the United States.**

Certain creditors have filed a complaint against Memory Lane asserting that their Claims are non-dischargeable pursuant to §§ 523 and 1192 of the Bankruptcy Code. The Debtors believe these claims have no merit. Nonetheless, and notwithstanding the provisions of this Section 12.1, the Debtors shall not be discharged from any Claim that is determined by a Final Order to be excepted from discharge.

12.2. **Release and Exculpation**. **Neither the Debtors nor any of their respective trustees, officers, employees, attorneys, advisors, agents, representatives and assigns (the "Debtor Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with these chapter 11 cases or the Plan except with respect to (a) their obligations under the Plan and any related agreement or (b) for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Section 12.2 hereof shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any of the Debtor Released Parties, nor shall anything in Section 12.2 hereof enjoin the United States or any state or local authority from bringing any Claim, suit, action or other proceedings against the Debtor Released Parties referred to herein for any liability whatever, including without limitation, any Claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties, or (b) limit the liability of the Debtor's Professionals Released pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.**

## ARTICLE XIII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

13.1. <u>Executory Contracts and Unexpired Leases</u>. The Debtors will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed, or before the date of the order confirming this Plan, upon the Effective Date.

**If you are a party to a lease or contract to be rejected and you object to the treatment of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the Confirmation of the Plan. ANY REJECTION DAMAGE CLAIM OR CLAIM TO A CURE PAYMENT MUST ALSO BE FILED BY SUCH DEADLINE.**

Notwithstanding the preceding, the Debtors are not aware of any executory contract being rejected pursuant to the Plan.

## ARTICLE XIV
## DEFAULT

14.1.    Failure of the Reorganized Debtors to make the Distributions required under the Plan within 30 days of the deadlines set forth herein, or failure of the Debtors to comply with any of the covenants or obligations contained in the Plan, which failure shall remain uncured for a period of 10 days after written notice and an opportunity to cure, shall constitute a default under the Plan.  The foregoing shall not be construed to prevent the implementation of any modification of the Plan, in accordance with the provisions of the Bankruptcy Code.  In the event of an uncured default, any creditor or party in interest may seek conversion or dismissal of the Chapter 11 Cases.

## ARTICLE XV
## RETENTION OF JURISDICTION

15.1.    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, including to:

a.  allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

b.  decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

c.  resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including  pursuant to § 365 of the Bankruptcy Code; and (b) any potential contractual obligation under any executory Contract that is assumed;

d.  ensure that Distributions to Holders of Allowed Claims and  Interests are accomplished pursuant to the provisions of the Plan;

e.  adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

f.  adjudicate, decide, or resolve any and all matters related to § 1141 of the Bankruptcy Code;

g.  enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

h.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan;

i.  issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Person with consummation or enforcement of the Plan;

j.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article XII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

k.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim;

l.  enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

m.  determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

n.  adjudicate any and all disputes arising from or relating to Distributions under the Plan;

o.  consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

p.  determine requests for the payment of Claims and Interests entitled to priority pursuant to § 507 of the Bankruptcy Code;

q.  hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code;

r.  enforce all orders previously entered by the Bankruptcy Court;

s.  hear any other matter not inconsistent with the Bankruptcy Code; and

t.  enter a Final Decree.

## ARTICLE XVI
## GENERAL & MISCELLANEOUS PROVISIONS

16.1.    <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code not otherwise defined herein are used in the Plan.

16.2.    <u>Severability</u>.  If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

16.3.    <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

16.4.    <u>Article and Section References</u>.  Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

16.5.    <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of New York govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

16.6.    <u>Revocation or Withdrawal of the Plan</u>.  The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation hearing, in which case the Plan shall be null and void and nothing contained herein shall be deemed to (a) constitute a waiver or release of any claims by or against, or any interests in, the Debtor or any other person, or (b) prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

16.7.    <u>Modification of the Plan</u>.  The Debtors reserve the right, in accordance with §1127 of the Bankruptcy Code, to amend or modify the Plan with order of the Bankruptcy Court as may be required.  After the Effective Date, the Debtors may, subject to order of the Bankruptcy Court, and in accordance with § 1127 of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

16.8.    <u>Avoidance and Recovery Actions</u>.  The Debtors do not believe that there are any Causes of Action or Avoidance Actions under §§ 541, 544, 547, 548, 550 or 553 of the Bankruptcy Code that should be pursued.

16.9.    <u>Deletion of Certain Classes</u>.  Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed deleted from the Plan for all purposes.

16.10.  <u>No Admissions</u>.  Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any person with respect to any matter set forth herein.

16.11.  <u>Further Actions</u>.  The Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, certificates, releases, and other agreements and to take such other action as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the transactions contemplated herein and therein.

16.12.  <u>Status Reports</u>.  After the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court post-Confirmation status reports detailing its progress toward a Final Decree in this case.  Status reports shall be filed on or before January 15, April 15, July 15, and October 15 of each year until a Final Decree is entered closing the Chapter 11 Cases.

16.13.  <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than §§ 5-1401 and 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; provided that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formation of the relevant Debtors or the Reorganized Debtors, as applicable.

**[remainder of page left blank]**

16.14.  <u>Notice</u>.  Any notice to be provided under the Plan shall be in writing and sent by certified mail, return receipt requested, or by email, addressed as follows:

Howard P. Magaliff, Esq.
Jeffrey N. Rich, Esq.
Rich Michaelson Magaliff, LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
*hmagaliff@r3mlaw.com*
*jrich@r3mlaw.com*

Dated: Port Washington, New York
       July 25, 2022

MEMORY LANE MUSIC GROUP LLC
By:

_____
Mark Spier, Managing Member

SCION THREE MUSIC LLC
By:

_____
Mark Spier, Manager

SCION FOUR MUSIC LLC
By:

_____
Mark Spier, Manager

LARRY SPIER MUSIC LLC
By:

_____
Mark Spier, Manager

Dated: New York, New York
       July 25, 2022

RICH MICHAELSON MAGALIFF, LLP
Attorneys for the Debtors
By:

/s/ Howard P. Magaliff
_____
HOWARD P. MAGALIFF
JEFFREY N. RICH
335 Madison Avenue, 9th Floor
New York, NY 10017
646.453.7851
*hmagaliff@r3mlaw.com*